**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW S. CLYDE, )<br>    Individually, and in his Official Capacity )<br>    as a member of the U.S. House of )<br>    Representatives, )<br>     )<br>LOUIE GOHMERT, )<br>    Individually, and in his Official Capacity )<br>    as a member of the U.S. House of )<br>    Representatives, and )<br>     )<br>LLOYD SMUCKER, )<br>    Individually, and in his Official Capacity )<br>    as a member of the U.S. House of )<br>    Representatives, )<br>     )<br>    Plaintiffs, )<br>     )<br>v. )<br>     )<br>WILLIAM J. WALKER, )<br>    In his Official Capacity )<br>    as Sergeant at Arms of the )<br>    U.S. House of Representatives, and, )<br>     )<br>CATHERINE SZPINDOR, )<br>    In her Official Capacity )<br>    as Chief Administrative Officer of the )<br>    U.S. House of Representatives, )<br>     )<br>    Defendants. ) | Case No.: 1:21-cv-1605 |

**FIRST AMENDED COMPLAINT**

Plaintiffs, Congressman Andrew S. Clyde, Congressman Louie Gohmert, and Lloyd Smucker, individually and in their official capacities as members of the U.S. House of Representatives, bring this suit for declaratory judgment, injunctive relief, and damages, against Sergeant at Arms of the House of Representatives, William J. Walker, and Chief Administrative Officer of the U.S. House of Representatives, Catherine Szpindor, in their official capacities.

Defendants have and/or threaten to continue to violate Plaintiffs' rights under Article I and the Twenty-Seventh Amendment of the U.S. Constitution, by selectively and punitively enforcing a House Rule against only Republican Representatives, and engaging in the constitutionally-prohibited reduction of Plaintiffs' congressional salaries as a means of harassing democratically-elected Representatives who are members of the opposition party in the House of Representatives. Defendants have also unconstitutionally inhibited the ability of Republican House members from attending sessions in the House Chamber, including denying some members the ability to vote before the voting periods have closed, and by fining members who seek to timely reach the floor, in violation of the U.S Constitution's Article I, §§ 5 and 6.  In support of this Complaint, Plaintiffs state as follows:

**PARTIES**

1. Plaintiff Andrew S. Clyde is the elected member of the U.S. House of Representatives from the Ninth Congressional District of Georgia. Representative Clyde is a member of the Republican Caucus, which is currently the minority opposition party in the 117th Congress. He resides in Jackson County, Georgia, and is officed at 521 Cannon House Office Building, Washington, D.C. 20515.

2. Plaintiff Louie Gohmert is the elected member of the U.S. House of Representatives from the First Congressional District of Texas.  Representative Gohmert is a member of the Republican Caucus, which is currently the minority opposition party in the 117th Congress. He resides in Tyler, Texas, and is officed at 2269 Rayburn House Office Building, Washington, D.C. 20515.

3. Plaintiff Lloyd Smucker is the elected member of the U.S. House of Representatives from the Eleventh Congressional District of Pennsylvania.  Representative

Smucker is a member of the Republican Caucus, which is currently the minority opposition party in the 117th Congress. He resides in Lancaster County, Pennsylvania, and is officed at 302 Cannon House Office Building, Washington, D.C. 20515.

4. Defendant William J. Walker is the Sergeant at Arms for the House of Representatives. He was nominated for his position by Speaker Nancy Pelosi, elected by the House, and is accountable to Speaker Pelosi. Under House Resolution 73, he is responsible for implementing the security procedures at the entrances to the chamber of the House of Representatives, including assessing the fines called for under House Resolution 73. Sergeant at Arms Walker is officed at Room H-124, U.S. Capitol, First St., SE, Washington, D.C., 20004.

5. Defendant Catherine Szpindor is the Chief Administrative Officer ("CAO") for the House of Representatives, which controls the payment of salaries to members of the House of Representatives. She was nominated to her position by Speaker Pelosi, elected by the House, and is accountable to Speaker Pelosi. CAO Szpindor is officed at Room H.B-28, U.S. Capitol, First St., SE, Washington, D.C., 20004.

## JURISDICTION & VENUE

6. The Court has federal question jurisdiction in this proceeding pursuant to U.S. Const, Art III, § 2 and 28 U.S.C. § 1331.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1).

## FACTUAL ALLEGATIONS

### A. The House Imposes A New Rule to Screen Members & Fine Violators By Reducing Their Salaries.

8. On Feb. 2, 2021, the U.S. House of Representatives passed House Resolution 73, directing the House Sergeant at Arms to impose a $5,000 fine against any member for "failure to complete security screening for entrance to the House Chamber," and a $10,000 fine for any

3

subsequent violation. H.R. 73, 117th Congress, 1st Sess., § 1(a)(1)-(2), *Imposition of Fines for Failure to Complete Security Screening for Entrance to House Chamber* (2021) (hereafter, the "Screening Rule").

9. Upon notice of an alleged violation of the Screening Rule, the member has the right to appeal the charge to the House Committee on Ethics. *Id.* § 1(a)(3) and (b). The member has 90 days from the time a violation is determined with finality–either because he does not contest it, or by the Committee's determination that he has violated the rule–to pay the fine. *Id.* § 1(c)(1) and (2).

10. If a member does not pay the fine within 90 days, the House's Chief Administrative Officer is required to deduct the fine from the member's salary. *Id.* § 1(c)(1).

11. The Screening Rule is implemented under the authority of the Sergeant at Arms using magnetometers – both free-standing and hand-held[1] – at the entrances to the House Chamber, this despite there being no reference to the use of magnetometers as part of the Screening Rule. *Id.* Free-standing magnetometers were initially placed at the West, North and East entrances upon adoption of the Screening Rule, and later added in the Speaker's Lobby at the South entrances.

**B. The Screening Rule and Fine For Violating the Rule Is Imposed On Republican Members of Congress, But Not Democratic Members of Congress.**

12. On February 3, 2021, Plaintiff Congressman Andrew Clyde entered the House Chamber without being screened by security personnel or passing through a magnetometer. Then-Acting Sergeant at Arms Timothy Blodgett notified Congressman Clyde on February 5, 2021 that Clyde would be fined $5,000 for violating the Screening Rule.

---

[1] The hand-held magnetometers are generally referred to as "wands," while the free-standing magnetometers are referred to as "magnetometers," or simply "mags."

13. On February 4, 2021, upon information and belief, Speaker Nancy Pelosi, the leader of the House Democratic Party majority, violated the Screening Rule by walking past the magnetometers at both the North and East entrances and entering the House Chamber via a door in the Speaker's Lobby, without subjecting herself to search via the magnetometers. The security personnel under the authority of the Sergeant at Arms made no effort to force her to be screened or to restrain her from entering the Chamber. The Sergeant at Arms did not issue her a citation, her violation was not referred to the House Ethics Committee, and she was not fined.

14. On February 5, 2021, the Republican members of the House Committee on Administration, Congressmen Rodney Davis, Barry Loudermilk, and Bryan Steil, delivered a letter to then-Acting Sergeant at Arms Blodgett, pointing out Speaker Pelosi's avoidance of the new security measures on February 4, 2021, and directing the Acting Sergeant at Arms to inform them once the fine under the Screening Rule was levied against Speaker Pelosi. To date, neither Acting Sergeant at Arms Blodgett nor Defendant Sergeant at Arms Walker have issued Speaker Pelosi a citation, her violation has not been referred to the House Ethics Committee, and she has not been fined.

15. In early February, 2021, after the Screening Rule's implementation, Congresswoman Maxine Waters, who represents California's 43rd Congressional District, serves as Chairwoman of the House Financial Services Committee, and is a senior member of the House Democratic Party majority, violated the Screening Rule by passing through the magnetometer at the West entrance to the House Chamber, setting off the magnetometer alarm. Despite the triggering of the magnetometer alarm, the security personnel visibly waved Congresswoman Waters on without further screening, making no effort to force her to be screened or to restrain

5

her.  The then-Acting Sergeant at Arms did not issue her a citation, her violation was not referred to the House Ethics Committee, and she was not fined.

16.     On February 4, 2021, Congressman Jamie Raskin, who represents Maryland's 8th Congressional District, and is a member of the House Democratic Party majority, violated the Screening Rule by rushing through the magnetometer at the East entrance to the House Chamber, setting off the alarm on the magnetometer, and rushing past the security officer when she stepped forward to use a hand-held magnetometer to complete the security screening of Raskin.  However, the security personnel made no further effort to force him to be screened or to restrain him.  The then-Acting Sergeant at Arms did not issue him a citation, his violation was not referred to the House Ethics Committee, and he was not fined.

17.     On Feb. 4, 2021, Congresswoman Nydia Velazquez, who represents New York's Seventh Congressional District, serves as Chairwoman of the House Small Business Committee, and is a senior member of the House Democratic Party majority, violated the Screening Rule by walking through the magnetometer, setting it off, and not stopping, as she continued into the House Chamber.  The security personnel made no effort to force her to be screened or to restrain her.  Not until Republican Congressman Jeff Duncan, who was behind Velazquez in line to be screened, loudly objected to the security personnel for their failure to enforce the Screening Rule against Velazquez, did she return to be further screened.  The Acting Sergeant at Arms did not issue her a citation, her violation was not referred to the House Ethics Committee, and she was not fined.

18.     On February 5, 2021, Plaintiff Congressman Andrew Clyde again entered the House Chamber, this time passing through a magnetometer but without allowing himself to be detained for a secondary screening by security personnel saying "I have to vote," as his official phone had set off the magnetometer.  Then-Acting Sergeant at Arms Blodgett notified

Congressman Clyde on Feb. 8, 2021 that he would be fined an additional $10,000 for violating the Screening Rule a second time.

19.     On February 23, 2021, Congressman Clyde appealed the fine notifications to the House Ethics Committee, asserting that the Screening Rule violated Article I, §§ 5 and 6, and the Twenty-Seventh Amendment of the U.S. Constitution, and that the Rule was being selectively enforced only against Republican members, and that multiple Democrats, including Speaker Pelosi, had violated the Screening Rule but had been exempted from enforcement.  The Committee denied his appeal on April 11, 2021, directing that he pay $15,000 in fines.  Pursuant to H.R. 73 § 1(c)(1), when he fails to pay the fine, Defendant CAO Szpindor will be required to take $15,000 from Congressman Clyde's congressional salary.

20.     On February 3, 2021, Plaintiff Congressman Louis Gohmert was screened upon entry to the House Chamber, at the West entrance, without incident.  At some point during the course of that day, Congressman Gohmert proceeded out of the House Chamber via the South doors and into the Speaker's Lobby and thence to the men's bathroom, the entrance to which is adjacent to the Speaker's Lobby – just feet from a security post.  On that occasion, security personnel were present but did not request Congressman Gohmert to re-submit to screening prior to re-entering the House Chamber.

21.     On February 4, 2021, Congressman Louis Gohmert was screened upon entry to the House Chamber without incident, using the freestanding magnetometer at the West entrance. Having remained there for a substantial period of time waiting to speak, he then went to the restroom via the Speaker's Lobby as he had done the day before.  Congressman Gohmert briefly exited the House Chamber to enter the restroom in full view of the officers acting on behalf of the Sergeant at Arms. Furthermore, the restrooms were normally screened by officers each day, and

on previous occasions Congressman Gohmert had not been screened a second time upon returning to the House Chamber from the restroom under similar circumstances. But on February 4, 2021, the security personnel requested that Congressman Gohmert submit to another screening using a hand-held wand; however, Gohmert informed them that he had already been screened, and proceeded back into the House Chamber.

22. Shockingly, on February 5, 2021, then-Acting Sergeant at Arms Blodgett notified Congressman Gohmert that he had violated the Screening Rule by entering the House Chamber on February 4, 2021 without being screened, and would be fined $5,000 for the violation.

23. On February 26, 2021, Congressman Gohmert appealed the fine notification to the House Ethics Committee, denying as a factual matter that he had violated the Screening Rule. At that time, then-Acting Sergeant at Arms Blodgett concurred with Gohmert's position that he had not violated the Rule. Congressman Gohmert's appeal observed, among other things, that the Screening Rule and its resultant fine were being selectively enforced only against Republicans, that it was not being enforced against Speaker Pelosi or other Democrats, that it inhibited the voters of Texas's First District from receiving the full benefit of the representative of their choice through the use of punitive fines, that such fines would result in the reduction of a member's salary in the same session in which it was passed, and that it violated Article I, § 6, Clause 1 of the U.S. Constitution, which prohibits members of Congress from being detained on their way to or from a session of the House.  The Committee denied his appeal on March 30, 2021, and directed that he pay a $5,000 fine.  Pursuant to H.R. 73 § 1(c)(1), when he fails to pay the fine, Defendant CAO Szpindor will be required to take $5,000 from Congressman Gohmert's congressional salary.

24. On May 19, 2021, a vote was called in the early afternoon for the final passage of H.R. 1629. At that time, Congressman Smucker was away from the Capitol Grounds and he

returned to vote. As he was en route to vote on foot, his scheduler informed him that only 28 people remained to vote, an indication that the vote could close out at any time. Knowing that he was very close to the closing out of the vote, Congressman Smucker began to run to the House Chamber. As he entered the Speaker's Lobby, Congressman Smucker believed that he may have only seconds to vote, thus he communicated to the security personnel at the East Lobby entrance that he would quickly vote – within their line of sight – and return to complete their security screening protocol (i.e., going through the magnetometer set up at the entrance to the House Chamber at that door), which he in fact did directly with no interruptions at approximately 2:55 p.m.  Congressman Smucker believed at the time he entered the House Chamber that had he delayed his vote to accommodate the Screening Rule, he would have missed the vote on H.R. 1629, thereby failing in his first duty as a Congressman on behalf of his constituents.

25. In spite of the foregoing, on May 20, 2021, Sergeant at Arms Walker notified Congressman Smucker that he had violated the Screening Rule by entering the House Chamber on May 19, 2021 without being screened, and would be fined $5,000 for the violation.

26. On May 25, 2021, Congressman Smucker appealed the fine notification to the House Ethics Committee, denying as a factual matter that he had violated the Screening Rule and provided the aforementioned explanation to the Committee. The Committee denied his appeal on June 25, 2021, thereby directing that he pay a $5,000 fine.  Pursuant to H.R. 73 § 1(c)(1), when Congressman Smucker fails to pay the fine, Defendant CAO Szpindor will be required to take $5,000 from his congressional salary.

27. Upon information and belief, Speaker Pelosi has instituted an unconstitutional policy of enforcing the Screening Rule against only members of the Republican minority in the House of Representatives, and exempting members of the Democratic majority from its

enforcement, resulting in only Republican members being fined and having their congressional salaries reduced, all for the purpose of creating a false narrative for the political benefit of the House Democratic majority. The enforcement of the Screening Rule has prevented Republican members of the House from exercising their constitutional duty of representation by delaying them from reaching the House Chamber in time to vote.

28. On April 14, 2021, Plaintiff Congressman Clyde was in his legislative office when a vote was called, at which point he hurried to the House Chamber to vote; however, upon his attempted entry to the House Chamber through a door in the Speaker's Lobby, the magnetometer through which he passed was set off, and Congressman Clyde was required to be re-screened prior to his entry into the House Chamber. Upon finally being approved to enter the House Chamber, Congressman Clyde rushed to the electronic voting device, but the voting system was shut down just prior to him being able to press the voting button, and he thus missed the opportunity to vote on H.R. 172, the Anti-Doping Agency Reauthorization Act. But for the delay at the magnetometers, he would have made that vote.

29. Upon information and belief, other members who missed votes due to being delayed by the magnetometer screening include Representatives Michael Burgess (TX-26), Lauren Boebert (CO-3), Jeff Duncan (SC-3), Chris Smith (NJ-4) and Brad Wenstrup (OH-2). All of these Representatives are in the House Republican Party minority.

**COUNT I - Violation of the 27th Amendment**
(Defendants Sergeant at Arms Walker and CAO Szpindor)

30. Plaintiffs incorporate ¶¶ 1-29, *supra*, herein.

31. The Twenty-Seventh Amendment of the U.S. Constitution provides, "No law varying the compensation for the services of the Senators and Representatives shall take effect, until an election of Representatives shall have intervened."

32. The word "varying" in the Twenty-Seventh Amendment means that congressional salaries may not be either increased or decreased during a given congressional term.

33. The Twenty-Seventh Amendment was enacted, in part, to prevent the financial pressure of salary reductions from being used to coerce or pressure members of Congress, both individually and as a group.

34. Imposing and collecting fines by reducing a member's salary during the term in which H.R. 73 was enacted constitutes a clear violation of the Twenty-Seventh Amendment's prohibition against such salary reductions.

35. Accordingly, Plaintiffs seek (1) a declaratory judgment that the House of Representatives may not impose nor collect fines enacted pursuant to H.R. 73, including by means of deducting such fines from a member's salary during the 117th Congress, as doing so would violate the Twenty-Seventh Amendment; (2) an injunction against Defendant Sergeant at Arms Walker in his official capacity prohibiting him from imposing fines pursuant to H.R. 73; (3) an injunction against Defendant CAO Szpindor in her official capacity prohibiting her from collecting fines enacted pursuant to H.R. 73 by means of deducting such fines from a member's salary during the 117th Congress; and (4) an injunction ordering Defendant CAO Szpindor in her official capacity to return to the respective members any fines collected by means of deducting monetary sums from a member's salary during the 117th Congress.

**COUNT II - Violation of U.S. Constitution Article I, §§ 5 and 6**
(Defendant Sergeant at Arms Walker)

36. Plaintiffs incorporate. ¶¶ 1-35, *supra*, herein.

37. Article I, § 5, Clause 2 of the U.S. Constitution provides, in pertinent part, "Each House may . . . punish its members for disorderly behavior." "Disorderly behavior" had a clear meaning in 1789, requiring affirmative action on the part of a member "in a manner violating law and good order."[2] No action of plaintiffs in this case violated either law or good order at any time, nor was either plaintiff reasonably characterizable as "disorderly" at any time.

38. Article I, § 6, Clause 1 of the U.S. Constitution provides, in pertinent part, "[Representatives] shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same[.]" The detention of a Representative for search or citation for reasons other than treason, felony or breach of the peace while such Representative is attempting to attend a session of the House, contravenes Article I, § 6, Clause 1 of the U.S. Constitution.

39. H.R. 73, as enforced by the House Sergeant at Arms, violates Article I, § 5, Clause 2, by seeking to impose a fine upon members of the House for conduct that is not "disorderly behavior" within the Constitution's meaning, as entering into the House Chamber without being screened beforehand does not disrupt the House's operations and good order, nor is it otherwise unlawful conduct. Furthermore, the then-Acting Chief of the Capitol Police, Yogananda Pittman, advised the entire Republican House members' conference on February 24, 2021, that there was no intelligence from any source that any member of the House of Representatives was a threat to any other member of the House. In other words, there was no

---

[2] American Dictionary of the English Language, Noah Webster, 1828. Accessed online on June 7, 2021 at http://webstersdictionary1828.com/

12

data or intelligence-based reason for the magnetometer screenings other than the political "optics" and narrative desired by the Speaker and her party, who used their majority status to impose the unconstitutional Screening Rule.

40.     H.R. 73, as enforced by Defendant Sergeant at Arms Walker, violates Article I, § 6, Clause 1, by inhibiting members of Congress from attending sessions of the House.

41.     Accordingly, Plaintiffs seek (1) a declaratory judgment that a member of the House declining to be subject to security screening before entering the House Chamber is not engaging in disorderly behavior within the meaning of Article I, § 5, Clause 2 of the U.S. Constitution for which the member can be punished; (2) a declaratory judgment that the House Sergeant at Arms, or those acting under his authority, inhibiting members of the House from attending sessions in the House Chamber in the absence of an arrest for treason, felony or breach of the peace, violates Article I, § 6, Clause 1 of the U.S. Constitution; and (3) an injunction against Defendant Sergeant at Arms Walker in his official capacity prohibiting him or those acting under his authority from (a) delaying members of the House from attending sessions in the House Chamber in the absence of an arrest for treason, felony or breach of the peace; and (b) imposing fines on members of the House for refusing to be screened before entering the House Chamber.

WHEREFORE, Plaintiffs request the foregoing relief, attorneys' fees as appropriate, and such other relief as the Court deems appropriate.

Respectfully submitted
CONGRESSMAN ANDREW S. CLYDE
CONGRESSMAN LOUIS GOHMERT
CONGRESSMAN LLOYD SMUCKER

_____/s/_____
By Counsel
Earl "Trey" Mayfield, D.C. Bar # 459998
tmayfield@jurisday.com
Juris Day, PLLC
10521 Judicial Dr., #200
Fairfax, Virginia 22030
Voice: (703) 268-5600
Facsimile: (703) 268-5602

Kenneth T. Cuccinelli, II
Local Bar Application Forthcoming
*Counsel for Plaintiffs*

Dated: July 15, 2021