**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ANDREW S. CLYDE, *et al.*,

                      *Plaintiffs*,

          v.                                       Case No. 1:21-cv-01605-TJK

WILLIAM J. WALKER, *et al.*,

                      *Defendants*.

---

**MOTION TO DISMISS OF DEFENDANTS WILLIAM J. WALKER AND**
**CATHERINE SZPINDOR**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants William

J. Walker and Catherine Szpindor respectfully move for an order dismissing Plaintiffs' Amended

Complaint (July 15, 2021) (ECF No. 9).  For the reasons set forth in the accompanying

Memorandum of Points and Authorities, the Amended Complaint should be dismissed with

prejudice.

A proposed order is attached.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492)
*General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
Eric R. Columbus (D.C. Bar No. 487736)
Stacie M. Fahsel (D.C. Bar. No. 1034314)
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants William J. Walker and Catherine Szpindor*

September 3, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2021, I caused the foregoing Motion to Dismiss of Defendants William J. Walker and Catherine Szpindor and the accompanying Memorandum of Points and Authorities in Support to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

/s/ Douglas N. Letter
Douglas N. Letter

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANDREW S. CLYDE, *et al.*,

                           *Plaintiffs*,

                v.

WILLIAM J. WALKER, *et al.*,

                         *Defendants*.

Case No. 1:21-cv-01605-TJK

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

STATEMENT........................................................................................................................... 2

I.   The House's Constitutional Authority To Govern Itself ......................................... 2

II.  The January 6 Attack And House Resolution 73 .................................................... 3

III. Member Compensation............................................................................................ 6

IV. Procedural History .................................................................................................. 6

ARGUMENT ........................................................................................................................... 7

STANDARD OF REVIEW ..................................................................................................... 8

I.   The Speech Or Debate Clause Bars Plaintiffs' Suit................................................ 9

II.  Plaintiffs Fail To State A Claim............................................................................. 12

     A.  The Rule Does Not Violate The Twenty-Seventh Amendment ................................ 13

     B.  The Rule Does Not Violate Section 5 Or 6 Of Article I Of The Constitution........... 20

CONCLUSION...................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 663 (2009)............................................................................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................8

*Boehner v. Anderson,*
    809 F. Supp. 138 (D.D.C. 1992)......................................................16

\*   *Boehner v. Anderson,*
    30 F.3d 156 (D.C. Cir. 1994)..........................................15, 16, 17, 18

*Carl v. Ferrell,*
    109 F.2d 351 (D.C. Cir. 1940).........................................................22

\*   *Consumers Union of U.S. v. Periodical Correspondents' Ass'n,*
    515 F.2d 1341 (D.C. Cir. 1975)...............................................9, 11, 12

*Doe v. McMillan,*
    412 U.S. 306 (1973)............................................................................9

*Eastland v. U.S. Servicemen's Fund,*
    421 U.S. 491 (1975)......................................................................9, 10

*Grand Lodge of the Fraternal Order of Police v. Ashcroft,*
    185 F. Supp. 2d 9 (D.D.C. 2001)......................................................8

\*   *Gravel v. United States,*
    408 U.S. 606 (1972)...........................................................10, 11, 12, 22

*Humphrey v. Baker,*
    848 F.2d 211 (D.C. Cir. 1988).........................................................17

*In re Grand Jury Subpoenas,*
    571 F.3d 1200 (D.C. Cir. 2009).......................................................20

*Kilbourn v. Thompson,*
    103 U.S. 168 (1880)..........................................................................20

*Kimberly v. Butler,*
    14 F. Cas. 498 (C.C.D. Md. 1869)...................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ........................................................................8

*Long v. Ansell*,
   293 U.S. 76 (1934) .........................................................................................22

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .........................................................................................8

\*   *McCarthy v. Pelosi*,
   5 F.4th 34 (D.C. Cir. 2021) ...........................................................9, 10, 11, 12

*Miller v. D.C.*,
   319 F. Supp. 3d 308 (D.D.C. 2018) .................................................................8

*Papasan v. Allain*,
   478 U.S. 265 (1986) .........................................................................................8

\*   *Rangel v. Boehner*,
   785 F.3d 19 (D.C. Cir. 2015) ..............................................................9, 10, 11

*Shaffer v. Clinton*,
   54 F. Supp. 2d 1014 (D. Colo. 1999) .............................................................16

*Schaffer v. Clinton*,
   240 F.3d 878 (10th Cir. 2001) ........................................................................16

*United States v. Ballin*,
   144 U.S. 1 (1892) .........................................................................................2, 3

*Youkelsone v. F.D.I.C.*,
   910 F. Supp. 2d 213 (D.D.C. 2012) .................................................................9

*Youkelsone v. F.D.I.C.*,
   560 F. App'x 4 (D.C. Cir. 2014) ......................................................................9

**Constitution and Statutes**

U.S. Const., Art. I, § 1 .........................................................................................2

U.S. Const., Art. I, § 5, cl. 2 .....................................................................3, 11, 20

U.S. Const., Art. I, § 6, cl. 1 ...........................................................6, 9, 13, 16, 21

U.S. Const., Art. I, § 7, cl. 2 ..............................................................................16

# TABLE OF AUTHORITIES
(continued)

Page(s)

U.S. Const., Amend XXVII ................................................................................13

2 U.S.C. § 4501 .................................................................................................6

2 U.S.C. § 4523 ...........................................................................................15, 19

2 U.S.C. § 5301 .................................................................................................6

5 U.S.C. § 5520a ..............................................................................................19

40 U.S.C. § 5101 ...............................................................................................3

40 U.S.C. § 5102 ...............................................................................................3

40 U.S.C. § 5104 ...............................................................................................3

**Legislative Authorities**

1 Annals of Cong. 440 (Joseph Gales, ed. 1834) ..............................................17

163 Cong. Rec. H7, H26 (daily ed. Jan. 3, 2017) .............................................19

167 Cong. Rec. H274-75 (daily ed. Feb. 2, 2021) ..........................................5, 6

H. Res. 73, 117th Cong. (2021) ...........................................................5, 6, 14, 15

H. Res. 5, 115th Cong. (2017) ..........................................................................19

Hinds' Precedents of the House of Representatives (1907)...............................21

Rev. Stat. 40 (Aug. 16, 1856) ..........................................................................21

**Other Authorities**

2 The Records of the Federal Convention of 1787 (Max Farrand ed., 1911)...............14

A Dictionary of the English Language, Samuel Johnson (1785)......................................14

American Dictionary of the English Language, Noah Webster (1828)........................20

Black's Law Dictionary (11th ed. 2019)...............................................................14, 22

Capitol Police Board, Police Board Regulations Pertaining to Firearms Explosives
    Incendiary Devices and Other Dangerous Weapons (Oct. 31, 1967), in Traffic
    Regulations for Capitol Grounds (amended Feb. 17, 2019) .....................................3

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

Clinton W. Francis, *Practice, Strategy, and Institution: Debt Collection in the English Common-Law Courts*, 1740-1840, 80 Nw. U. L. Rev. 807 (1986) ..........................22

Committee on Homeland Security and Governmental Affairs and Committee on Rules and Administration of the United States Senate, *Examining the U.S. Capitol Attack, A Review of Security, Planning, and Response Failures on January 6* (2021) ...................................................................................................4

Cong. Rsch. Serv., CRS Report 97-1011, Salaries of Members of Congress: Recent Actions and Historical Tables (2021) ...........................................................6

Cong. Rsch. Serv., RL31382, Expulsion, Censure, Reprimand, and Fine: Legislative Discipline in the House of Representatives (2016)..............................21

GianCarlo Canaparo & Paul J. Larkin, Jr., The Twenty-Seventh Amendment: Meaning and Application, Harvard Journal of Law & Public Policy, Sept. 2, 2021 ..........................................................................................................16, 17

Hunter Walker, *In Wake of Capitol Riot, House Members Subject to Security Screenings*, Yahoo News (Jan. 12, 2021) ....................................................4

Josh Chafetz, Democracy's Privileged Few (2007)..................................................20

Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (Apr. 12, 2021)...........................................................................................................7

Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (Mar. 30, 2021) ..........................................................................................................7

Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (June 28, 2021)..........................................................................................................7

Oxford English Dictionary (2d ed. 1989) ................................................................14

Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497 (1992) ................................13, 17, 18

The Documentary Record from the First Federal Congress (Helen E. Veit et al., eds., 1991).........................................................................18

United States Department of Justice, Seven Months Since the Jan. 6 Attack on the Capitol Record (2021).................................................................................4

## INTRODUCTION

Following the January 6, 2021, attack on the Capitol by insurrectionists attempting to disrupt Congress's count of the electoral votes in the Presidential election, the House of Representatives adopted a Resolution authorizing imposition of fines against House Members who fail to complete a security screening for entrance to the House Chamber.  If a Member fails to pay a fine as required, the Resolution directs that the fine be deducted from a Member's net salary.  The Resolution serves multiple important purposes: it ensures that the law and regulations prohibiting weapons in the House Chamber are being obeyed; protects House Members and staff from injury and violence; ensures that Members and staff feel safe and secure while in the Chamber conducting their legislative duties; and ensures that Members can serve their constituents free from the distraction of firearms and other dangerous weapons.

As we demonstrate in this brief, adoption of this Resolution lies squarely within the House's broad constitutional authority to make its own rules of proceeding and to discipline Members who violate those rules.  Nonetheless, the Plaintiff House Members—Reps. Andrew Clyde, Louie Gohmert, and Lloyd Smucker—ask this Court to declare the implementation of the Resolution unconstitutional and to enjoin the House Sergeant at Arms and House Chief Administrative Officer from enforcing it.  The Court should reject those extraordinary requests and dismiss the complaint.

First and foremost, the complaint must be dismissed for lack of subject matter jurisdiction.  Plaintiffs' suit is barred by the Constitution's Speech or Debate Clause, which provides absolute immunity from suit to Members, Officers, and Congressional aides for their actions taken as part of their legislative functions.  There can be no doubt that the challenged acts, all of which involve enforcement of a Resolution adopted pursuant to the House's constitutional powers to govern its own proceedings and punish its own Members, are

legislative acts absolutely protected by the Clause.  This is particularly true here, where the Resolution at issue is designed to ensure a safe and secure environment where all House debates and votes take place.

In addition, and alternatively, Plaintiffs' complaint must be dismissed because it fails to state a claim on which relief can be granted.  The complaint alleges that the challenged actions by the House Defendants violate the Twenty-Seventh Amendment; Article I, Section 5, Clause 2; and Article I, Section 6, Clause 1 of the Constitution.  All of those claims fail as a matter of law.  The Twenty-Seventh Amendment, by its plain terms and consistent with its history and purpose, does not apply here; Article I, Section 5, Clause 2 (the Discipline Clause) gives the House broad powers to punish its Members for violating internal House rules; and Article I, Section 6, Clause 1 (the Arrest Clause) is not implicated here because Plaintiffs have not alleged any "arrest" within the meaning of that Clause.

Because the suit is barred by the Speech or Debate Clause, and because in any event the complaint fails to state a claim, Plaintiffs' complaint must be dismissed.

## STATEMENT

## I.    The House's Constitutional Authority To Govern Itself

Article I of the Constitution vests all federal "legislative Powers … in a Congress of the United States, which shall consist of a Senate and House of Representatives."  U.S. Const., Art. I, § 1.  Those powers are "not vested in any one individual, but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole."  *United States v. Ballin*, 144 U.S. 1, 7 (1892).

The Constitution grants the House and Senate each wide discretion to effectuate those provisions and to govern themselves.  The Rulemaking Clause empowers each house to

"determine the Rules of its Proceedings," and the Discipline Clause authorizes each house to enforce those rules by "punish[ing] its Members for disorderly Behaviour."  U.S. Const., Art. I, § 5, cl. 2.  Absent a conflict with an express constitutional requirement or a violation of "fundamental rights," the rulemaking power of each house is plenary and beyond judicial review. *Ballin*, 144 U.S. at 5.

## II.     The January 6 Attack And House Resolution 73

1.     Federal law expressly prohibits the carrying of firearms and other dangerous weapons on the U.S. Capitol Grounds and inside all buildings on the Capitol Grounds, including, *inter alia*, the U.S. Capitol and all House and Senate Office Buildings.  *See* 40 U.S.C. § 5104(e)(1); *see id.* at §§ 5101, 5102.  Since enactment of that law in 1967, the Capitol Police Board (the Legislative Branch authority that governs the United States Capitol Police) has issued and maintained regulations that set forth certain circumstances in which carrying firearms would be authorized, while specifying that, notwithstanding such exceptions,

> [n]o person … shall carry any firearm inside the chamber or on the floor of either House, in any lobby or cloakroom adjacent thereto, in the galleries of either House or in the Marble Room of the Senate or Rayburn Room of the House unless assigned or approved by the two Sergeants of Arms for maintenance of adequate security.[1]

2.     On January 6, 2021, a Joint Session of the House and Senate convened in the Capitol to count the Electoral College votes in the 2020 Presidential election.  The events that followed are well known:  In the early afternoon, a large group of rioters forced their way into the Capitol, including by criminally assaulting police officers and breaking windows.  *See*

---

[1] Capitol Police Board, Police Board Regulations Pertaining to Firearms Explosives Incendiary Devices and Other Dangerous Weapons (Oct. 31, 1967), in Traffic Regulations for Capitol Grounds (amended Feb. 17, 2019), Appendix J, *available at* https://perma.cc/R82L-QNE7.

Committee on Homeland Security and Governmental Affairs and Committee on Rules and Administration of the United States Senate, *Examining the U.S. Capitol Attack, A Review of Security, Planning, and Response Failures on January 6*, 21, 23-25 (2021).[2]  Members of the House and Senate were evacuated, and the Senate Chamber was overrun.  *Id.* at 25-26.  Rioters vandalized the Capitol, stole property, and ransacked offices.  *Id.* at 1.  Seven hours after the breach, the Capitol was declared secure, and the Joint Session was able to resume its constitutional responsibility to complete the final election count.  *See id.* at 26.

Approximately 140 police officers were assaulted during the attack.  *See* United States Department of Justice, Seven Months Since the Jan. 6 Attack on the Capitol.[3]  As of August 6, at least 175 defendants have been charged with assaulting, resisting, or impeding officers or employees, including over 55 individuals who have been charged with using a deadly or dangerous weapon or causing serious bodily injury to an officer.  *See id.*  Over 500 defendants have been charged with entering or remaining in a restricted federal building or grounds, including over 60 individuals who have been charged with entering a restricted area with a dangerous or deadly weapon.  *See id*.

3.     Following the attack on the Capitol, security screening procedures for entering the House Chamber were implemented, and Members were informed that failing to complete security screening at the Chamber entrances, or carrying prohibited firearms or other dangerous weapons into the Chamber, could result in denial of access to the Chamber.  *See generally* Hunter Walker, *In Wake of Capitol Riot, House Members Subject to Security Screenings*, Yahoo News (Jan. 12, 2021).[4]

---

[2] *Available at* https://perma.cc/6Y95-S86C.

[3] *Available at* https://perma.cc/EFW8-WCAY.

[4] *Available at* https://perma.cc/4R75-86EN.

4.      In support of their mission to protect Congress, U.S. Capitol Police officers perform security screening—including by using a mix of freestanding magnetometers, handheld wands, and other techniques—at the entrances to the House Chamber, as they do in numerous locations within buildings on the Capitol Grounds.  The magnetometers detect metal objects, including firearms and other dangerous weapons.  If a person sets off the magnetometer while passing through it, an officer will conduct a secondary screening, often using a handheld wand scanner, to locate the object responsible for setting off the magnetometer.

All persons entering the House Chamber are instructed to undergo security screening at each entrance, and persons who attempt to enter the House Chamber without first submitting to screening are reminded to do so.  Any incident of a person entering the House Chamber without submitting to a security screening is memorialized by U.S. Capitol Police and transmitted to the Office of the Sergeant at Arms.

5.      On February 1, 2021, House Resolution 73 was introduced by the Committee on Rules Chairman and was adopted by the full House the next day.  *See* H. Res. 73, 117th Cong. (2021); 167 Cong. Rec. H274-75 (daily ed. Feb. 2, 2021).  The Resolution provides that the "Sergeant-at-Arms is authorized and directed to impose a fine against a Member, Delegate, or the Resident Commissioner for failure to complete security screening for entrance to the House Chamber."  H. Res. 73 § 1(a)(1).  The Resolution imposes a $5,000 fine for a first offense and a $10,000 fine for any subsequent offense.  *Id.* § 1(a)(2).  The fined individual may appeal to the House Committee on Ethics, which by majority vote may overturn the fine.  *Id.* § 1(b)(2).

The Resolution further provides that "[i]f a Member, Delegate, or Resident Commissioner against whom a fine is imposed … has not paid the fine prior to the expiration of the 90-calendar day period" following the resolution of an appeal or the expiration of the time to

appeal, "the [House] Chief Administrative Officer shall deduct the amount of the fine from the net salary otherwise due the Member, Delegate, or Resident Commissioner." *Id.* § 1(c).

### III.    Member Compensation

Article I, Section 6, of the Constitution provides that "Compensation" for Members of Congress must be "ascertained by Law, and paid out of the Treasury of the United States." U.S. Const., Art. 1, § 6, cl. 1.  Before the early 1990s, Congress periodically enacted legislation to alter its compensation. *See* Cong. Rsch. Serv., CRS Report 97-1011, Salaries of Members of Congress: Recent Actions and Historical Tables 2 (2021) (hereinafter CRS Report 97-1011). More recently, compensation has been determined pursuant to a statutory formula for automatic adjustments. *See id.*  The Ethics Reform Act of 1989, 2 U.S.C. § 4501, establishes the current annual adjustment formula, which is based on changes in private sector wages as determined by a specified index. *See* CRS Report 97-1011, at 1. The adjustment is automatic unless it is denied by legislation, although the percentage may not exceed the percentage base pay increase for certain other federal employees. *See id.*  Beginning with an adjustment in 1991, annual adjustments were accepted by Congress 13 times, with the most recent adjustment in 2009. *See id.*  Since 2009, pay adjustments have been denied by legislation every year. *See id.*

Since 1983, Member salaries have been funded in a permanent appropriations account. *See* CRS Report 97-1011, at 1.  House Members are paid on a monthly basis. *See* 2 U.S.C. § 5301.  Members' monthly paychecks reflect numerous voluntary and required deductions from their salary, including deductions for federal retirement benefits, Thrift Savings Plan contributions, health insurance contributions, federal and state taxes, and Social Security.

### IV.    Procedural History

1.      The relevant facts in this case are straightforward and undisputed.  All three Plaintiffs are Members of the House.  On separate occasions in 2021, each Plaintiff Member

entered the House Chamber without submitting to security screening (Rep. Clyde did so twice). *See* Am. Compl. ¶¶ 12, 18, 21, 24.  Following each occasion, the House Sergeant at Arms notified the respective Member that he would be fined for his violation of House Resolution 73. *See id.* ¶¶ 12, 18, 22, 25.  The Plaintiff Members appealed each violation to the House Ethics Committee.  A majority of the House Ethics Committee did not agree to the appeals, and thus, the appeals were denied.[5]  The Plaintiff Members have not yet paid their fines, and the amended complaint indicates that they do not intend to do so.  *See* Am. Compl. ¶¶ 19, 23, 26.

2.      Rep. Clyde and Rep. Gohmert filed a complaint, ECF No. 1, which they subsequently amended, adding Rep. Smucker as a Plaintiff, ECF No. 9 (Am. Compl.).  Their complaint asserts that the Members are suing in their individual and official capacities, and it names House Sergeant at Arms William Walker and House Chief Administrative Officer Catherine Szpindor as defendants.  *Id.* ¶¶ 1-5.  The complaint alleges that these House officials violated and continue to violate the Twenty-Seventh Amendment of the Constitution, as well as Article I, Sections 5 and 6, of the Constitution, by enforcing House Resolution 73.  *See id.* ¶¶ 30-41.  Plaintiffs seek declaratory and injunctive relief.  *See id.*

### ARGUMENT

Plaintiffs' amended complaint must be dismissed for two independent reasons.  First, it should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs' claims are precluded by the Speech or Debate Clause immunity expressly provided for in Article I of the Constitution.  Second, and in the alternative, the

---

[5] Am. Compl. ¶¶ 19, 23, 26; *see* Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (Apr. 12, 2021), *available at* https://perma.cc/D772-LCFS; Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (Mar. 30, 2021), *available at* https://perma.cc/L6BT-QZLS; Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (June 28, 2021), a*vailable at* https://perma.cc/ZLJ9-NP7A.

complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it

fails to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

Under Rule 12(b)(1), Plaintiffs bear the burden of establishing subject matter jurisdiction.

*See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "Because subject-matter jurisdiction

focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the

court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional

authority." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C.

2001).  In considering a motion pursuant to Rule 12(b)(1), a court should "give the plaintiff's

factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion."  *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must have pleaded

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at

556).  In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept a plaintiff's

factual allegations as true and construe the complaint in favor of the plaintiff.  *See Miller v. D.C.*,

319 F. Supp. 3d 308, 312 (D.D.C. 2018).  Critically for this case, the Court need not accept as

true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286

(1986), or an "inference[]" that is "unsupported by the facts set out in the complaint," *Kowal v.

MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In considering a motion to dismiss, "a court may take judicial notice of historical,

political, or statistical facts, or any other facts that are verifiable with certainty." *Youkelsone v.

F.D.I.C.*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014).

8

## I.     The Speech Or Debate Clause Bars Plaintiffs' Suit

Plaintiffs' suit is barred by the Constitution's Speech or Debate Clause.  *See* U.S. Const., Art. I, § 6, cl. 1.  The Clause provides absolute immunity from civil suit for Members of Congress, Officers, and their aides for all "legislative acts"—a term that the D.C. Circuit has broadly construed to include execution and implementation of the House's internal rules.  *See McCarthy v. Pelosi*, 5 F.4th 34, 38-40 (D.C. Cir. 2021); *Consumers Union of U.S. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1351 (D.C. Cir. 1975).  Because Defendants' imposition and collection of fines pursuant to House Resolution 73 are legislative acts, the Clause requires dismissal of this suit.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const., Art. I, § 6, cl. 1.  The "central object" of the Clause is to protect the "independence and integrity of the legislature."  *McCarthy*, 5 F.4th at 38 (citation omitted).  The Clause also prevents litigation distractions that may "disrupt the legislative function."  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).

The Supreme Court has "consistently read the Speech or Debate Clause 'broadly' to achieve its purposes."  *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (quoting *Eastland*, 421 U.S. at 501-02).  It is thus "long settled" that the Clause's protections apply "not just to speech and debate in the literal sense, but to all 'legislative acts.'"  *McCarthy*, 5 F.4th at 39 (quoting *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973)).  Legislative acts are those that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings."  *Gravel v. United States*, 408 U.S. 606, 625 (1972).  Such acts "include both (i) matters pertaining 'to the consideration and passage or rejection of proposed legislation,' and (ii) 'other matters which the Constitution places within the jurisdiction

9

of either House.'"  *McCarthy*, 5 F.4th at 40 (quoting *Gravel*, 408 U.S. at 625).  Where it applies, the Clause is an "absolute bar" to suit, including when a legislative act is alleged to be in violation of the Constitution.  *Eastland*, 421 U.S. at 503, 509-10.  "Such is the nature of absolute immunity, which is—in a word—absolute."  *Rangel*, 785 F.3d at 24.

Further, it is "well established that the Clause's protections extend to Congressional aides and staff."  *McCarthy*, 5 F.4th at 39; *see Rangel*, 785 F.3d at 25; *Gravel*, 408 U.S. at 618.  Specifically, the Clause "applies to aides and staff 'insofar as their conduct … would be a protected legislative act if performed by a Member.'"  *McCarthy*, 5 F.4th at 38 (quoting *Gravel*, 408 U.S. at 618).  The "key consideration, Supreme Court decisions teach, is the act presented for examination, not the actor."  *McCarthy*, 5 F.4th at 38 (citation omitted).

In their amended complaint, Plaintiffs challenge the implementation and execution of House Resolution 73, which authorizes the Sergeant at Arms to impose a fine against a Member for violating established security screening protocols for entrance to the House Chamber, and also authorizes the Chief Administrative Officer to collect the fine, including, if necessary, by deducting the amount of the fine from the net salary of the Member.  The complaint alleges that House Resolution 73, as enforced, violates the Twenty-Seventh Amendment and Sections 5 and 6 of Article I of the Constitution.  *See* Am. Compl. ¶¶ 34, 39, 40.  The Plaintiffs seek various declaratory and injunctive relief that would prohibit the implementation of House Resolution 73 and the collection of fines pursuant to that rule.  *See id.* ¶¶ 35, 41.

The Speech or Debate Clause bars Plaintiffs' suit because the challenged acts here are undeniably legislative.  The Rulemaking Clause of the Constitution provides that the House may "determine the Rules of its Proceedings," and the Discipline Clause provides that the House may "punish its Members for disorderly Behaviour."  U.S. Const., Art. I, § 5, cl. 2.  The Constitution thus specifically grants to Congress the authority to adopt its own rules and to discipline its

Members.  Accordingly, the House's adoption of House Resolution 73, and the enforcement and administration of that rule, are all legislative acts that are an "integral part" of a "matter[] which the Constitution places within the jurisdiction of [the] House."  *Gravel*, 408 U.S. at 625.

Under a straightforward application of D.C. Circuit precedent, Plaintiffs' suit is barred. In *Rangel*, the D.C. Circuit held that the Speech or Debate Clause barred a Member's suit against other Members, committee staff, and the Clerk of the House challenging his censure as a violation of House Rules and the Due Process Clause.  785 F.3d at 23-25.  Relying on the Discipline Clause, the D.C. Circuit reasoned that Congressional discipline is "a 'legislative' matter that 'the Constitution places within the jurisdiction of [the] House.'"  *Id.* (quoting *Gravel*, 408 U.S. at 625); *see* U.S. Const., Art. I, § 5, cl. 2.

Likewise, in *Consumers Union*, a magazine publisher challenged Congressional rules requiring members of the press to apply to gain access to the House and Senate press galleries. 515 F.2d at 1342.  The D.C. Circuit held that the challenge was barred by the Speech or Debate Clause.  *Id.* at 1351.  The court explained that the defendants were "enforcing internal rules of Congress validly enacted under authority specifically granted to the Congress," and thus were engaged in legislative acts.  *Id.* at 1350; *see McCarthy*, 5 F.4th at 40 (reaffirming *Consumers Union*).  Here, too, the administration and enforcement of an internal House Resolution governing Member discipline—adopted by the full House pursuant to its specific constitutional authority—are obviously legislative acts that fall squarely within the Clause.

Plaintiffs cannot circumvent the Speech or Debate Clause by naming in their complaint only the Sergeant at Arms and the Chief Administrative Officer for their execution of House Resolution 73.  Recently, in *McCarthy v. Pelosi*, the D.C. Circuit held that the plaintiffs' lawsuit challenging the proxy voting rules was barred by the Speech or Debate Clause.  5 F.4th at 41.  In so holding, the court rejected the plaintiffs' argument that "the acts of voting on and adopting the

11

Resolution lie within the Clause's zone of immunity, but acts undertaken in implementing the Resolution do not."  *Id.* at 40.  As the D.C. Circuit instructed, "[t]he salient distinction under the Speech or Debate Clause is not between enacting legislation and executing it"; it "instead is between legislative acts and non-legislative acts."  *Id.* at 41.  The court noted that in *Consumers Union* it dismissed the suit against the Sergeants at Arms of both houses of Congress because the Clause "encompassed not just the promulgation of the rules governing seating in the press galleries, but also the administration and enforcement of those rules."  *Id.*; *see also Consumers Union,* 515 F.2d at 1350-51.  The court thus reaffirmed that the Clause applies to conduct "executing" or "enforcing" the "internal rules of Congress."  *McCarthy*, 5 F.4th at 41.

As in *McCarthy* and *Consumers Union*, the challenged acts here by the Sergeant at Arms and Chief Administrative Officer involving the execution of House Resolution 73 are themselves legislative acts pertaining directly to the internal rules and the discipline of Members—matters "that the Constitution places within the jurisdiction of [the] House."  *Gravel*, 408 U.S. at 625.

Finally, applying Speech or Debate immunity here fulfills the fundamental aim of the Clause:  preserving the "independence and integrity of the legislature."  *McCarthy*, 5 F.4th at 38 (citation omitted).  The continuation of this litigation—which involves the discipline of House Members pursuant to an internal rule designed to govern access to the House Chamber where all voting on legislation occurs—would risk compromising the independence of the legislature and creating the distractions that the Clause was designed to prevent.  The Clause bars this action.

## II.     Plaintiffs Fail To State A Claim

This action should be dismissed for the independent reason that the complaint fails to state a claim.

A.       **The Rule Does Not Violate The Twenty-Seventh Amendment**

Count I of Plaintiffs' amended complaint alleges that the enforcement of House Resolution 73 violates the Twenty-Seventh Amendment.  *See* Am. Compl. ¶¶ 30-35.  The Twenty-Seventh Amendment provides:  "No law varying the compensation for the services of the Senators and Representatives shall take effect, until an election of Representatives shall have intervened."  U.S. Const., Amend. XXVII.  The amendment was intended to augment the Ascertainment Clause, which provides that "Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States."  U.S. Const., Art. I, § 6, cl. 1; *see* Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497, 502 (1992).  Although the amendment was introduced in Congress by James Madison in 1789, it was not ratified by the requisite three-fourths of the States until 1992.  *See* Bernstein*, supra*, at 539.  From the First Congress through the amendment's ratification, proponents of the amendment were animated by concerns about the actual or seeming impropriety of having Congress determine its own pay.  *See id.* at 522-42.

Plaintiffs' claim pursuant to the Twenty-Seventh Amendment fails.  Under the plain text of the Twenty-Seventh Amendment, fines imposed and collected pursuant to House Resolution 73 do not change the "compensation for the services" of House Members, and House Resolution 73 is not a "law" within the meaning of the amendment.  Further, the history and purpose of the amendment, as well as the logical consequences of Plaintiffs' position, all confirm that House Resolution 73 does not violate the Twenty-Seventh Amendment.

1.   *The Plain Language Of The Twenty-Seventh Amendment Does Not Cover House Resolution 73*

By its plain text, the Twenty-Seventh Amendment does not apply to House Resolution 73 for two reasons: (1) the fines at issue do not vary Member "compensation"; and (2) House Resolution 73 is not a "law."

*First*, a fine imposed pursuant to House Resolution 73 does not "vary the compensation for the services" of Members within the meaning of the Twenty-Seventh Amendment.  A fine is a "pecuniary criminal punishment or civil penalty payable to the public treasury."  *Fine*, Black's Law Dictionary (11th ed. 2019).  In this case, the fine at issue is a penalty for the failure to complete a security screening for entrance to the House Chamber.  By contrast, "compensation" has long been understood to mean payment for services rendered, such as salary or wages.  *See, e.g., Compensation*, Black's Law Dictionary (11th ed. 2019) ("Remuneration and other benefits received in return for services rendered; esp., salary or wages."); *Compensation*, Oxford English Dictionary (2d ed. 1989) ("salary or wages … payment for services rendered"); 2 The Records of the Federal Convention of 1787 44-45 (Max Farrand ed., 1911) (using "salaries" and "compensation" interchangeably).  Relatedly, "service" is "[t]he official work or duty that one is required to perform."  *Service*, Black's Law Dictionary (11th ed. 2019); *see also Service*, A Dictionary of the English Language, Samuel Johnson (1785) (defining "service" as "[e]mployment; business").

A fine imposed pursuant to House Resolution 73 does not change Member "compensation" for their "services" within the meaning of the Twenty-Seventh Amendment. House Resolution 73 affects Member salary only conditionally and indirectly:  if a Member is fined for failure to complete a security screening, and if that Member fails to pay that fine within the prescribed period, only then may the fine be deducted from the Member's salary.  *See* H.

14

Res. 73; *see also* 2 U.S.C. § 4523 (providing specific authorization for such salary deductions since 1934).

That attenuated chain of events—which will apply to a specific Member *only if* the Member takes (or fails to take) specific actions—does not transform a fine into a reduction of compensation for the Member's services.  Indeed, even when a fine is deducted from a Member's salary for failure to pay, the fine is taken from the Member's "net salary otherwise due the Member"—*i.e.*, the Member's take-home pay for that pay period, not the Member's gross salary.  *See* H. Res. 73 § 1(c).  A fine thus has no effect on the total amount of money the Member earns for his or her services, and is not a change to compensation.

*Second,* a House rule is not a "law" within the meaning of the Twenty-Seventh Amendment.  House Resolution 73 was adopted by the House alone, and was not the product of bicameralism and presentment.  In *Boehner v. Anderson*, 30 F.3d 156 (D.C. Cir. 1994)—the only appellate decision to address the meaning of the Twenty-Seventh Amendment—the D.C. Circuit held that, for purposes of the Twenty-Seventh Amendment, a "law" requires passage by both houses of Congress and is either signed by the President or takes effect when Congress overrides the President's veto.

In *Boehner*, the court considered a challenge to a provision of the Ethics Reform Act that set up a mechanism for an annual cost of living adjustment (COLA) for Members of Congress.  30 F.3d at 158.  The court held that the COLA provision did not violate the Twenty-Seventh Amendment.  *Id.*  As a preliminary matter, the court noted that "[t]he Constitution does not define a law except to say (at least implicitly) that it is the product of the legislative process" of bicameralism and presentment.  *Id.* at 161.  Specifically, the Constitution provides:  "Every Bill which shall have passed the House of Representatives and the Senate shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it … If any

Bill shall not be returned by the President within ten Days … the Same shall be a Law[.]"  U.S. Const., Art. I, § 7, cl. 2.

The *Boehner* court thus explained that the Ethics Reform Act "became a law" within the meaning of the Twenty-Seventh Amendment on November 30, 1989, "when, the bill having passed both Houses and been presented to President Bush, he signed it into law."  30 F.3d at 161. Accordingly, it had "been the law since 1989 that a COLA would be made on January 1, 1991 and each year thereafter pursuant to a specified formula," and the COLA provision was constitutional "because it did not cause any adjustment to congressional compensation until after … the seating of the new Congress."  *Id.* at 162.  In other words, each annual COLA did not violate the Twenty-Seventh Amendment because the adjustments were not new "laws" within the meaning of that amendment; only the original statute—passed by both chambers of Congress and signed by the President in 1989—was the relevant law.  *See id.*; *Boehner v. Anderson*, 809 F. Supp. 138, 143 (D.D.C. 1992) ("The annual COLAs are not subject to the bi-cameralism requirements of the Constitution; each year the COLA becomes effective by the terms of the 1989 Act; no additional law is necessary.  In short, each COLA is not a law and, therefore, is not subject to the requirements of the 27th amendment."); *Shaffer v. Clinton*, 54 F. Supp. 2d 1014, 1025 (D. Colo. 1999) ("*Boehner* held annual COLAs were not independent laws under the Twenty-seventh Amendment[.]"), *aff'd on other grounds sub nom. Schaffer v. Clinton*, 240 F.3d 878 (10th Cir. 2001).

Consistent with the reasoning in *Boehner*, there is no "law" at issue in this case to which the Twenty-Seventh Amendment would apply.  That amendment establishes an additional procedural requirement for laws varying Member compensation (*i.e.*, *when* such a law can take effect), and thus the word "law" logically takes on the procedural meaning contemplated in Article I.  *See* GianCarlo Canaparo & Paul J. Larkin, Jr., *The Twenty-Seventh Amendment:*

*Meaning and Application*, Harvard Journal of Law & Public Policy, Sept. 2, 2021, at 9-11.[6]  The

complaint challenges only House Resolution 73, which is simply an internal resolution adopted

by a single chamber of Congress, not the product of the bicameralism-and-presentment process

set out in the Constitution.  *See Boehner*, 30 F.3d at 161.  The Twenty-Seventh Amendment,

therefore, does not apply.

Furthermore, there is no question that the Ascertainment Clause, which the Twenty-

Seventh Amendment modifies, refers to laws enacted through the process of bicameralism and

presentment when it provides that Congressional compensation shall be "ascertained by law."

*See Humphrey v. Baker*, 848 F.2d 211, 215 (D.C. Cir. 1988) (holding that statutory delegation of

authority to President to set Congressional salaries, subject to Congressional disapproval, did not

violate Ascertainment Clause where "the procedures eventuating in the specific figures" were set

by legislation); *see also* Canaparo & Larkin, *supra*, at 9-11.  Thus, the identical term "law" in the

Twenty-Seventh Amendment, introduced by James Madison in the First Congress as a

supplement to the Ascertainment Clause, should be given the same meaning.

> 2.  *The Twenty-Seventh Amendment's History And Purpose Confirm That House Resolution 73 Does Not Violate The Amendment*

The history and purpose of the Twenty-Seventh Amendment further support that it does

not apply to House Resolution 73.  In the words of Madison as reported by the Annals of

Congress, the Amendment was intended to address the "seeming impropriety in leaving any set

of men without control to put their hand into the public coffers, to take out money to put in their

pockets."  1 Annals of Cong. 440 (Joseph Gales, ed. 1834).  Between 1789 and 1791, the

amendment was ratified by six States but rejected by five, and thus was not adopted.  *See*

Bernstein, *supra*, at 533-34.  In 1873, however, Ohio ratified the amendment in response to

---

[6] *Available at* https://perma.cc/L8KA-77SA.

legislation increasing the pay of Federal Government officials (the so-called "Salary Grab" Act). *See id.* at 534. Wyoming followed suit in 1978, after a Congressional pay increase. *See id.* at 537. Thirty-three additional states ratified the amendment between 1983 and 1992, after which Congress approved the amendment as the Twenty–Seventh Amendment to the Constitution. *See id.* at 537-38, 542.

As this history demonstrates, the Amendment was designed to address the potential for abuse and the appearance of impropriety that necessarily exist when a group of individuals sets its own pay. Indeed, as the D.C. Circuit has explained, "[a]ccording to Madison, and to all the ratifying [S]tates that stated their understanding, the purpose of the amendment is to ensure that a congressional pay increase 'cannot be for the particular benefit of those who are concerned with determining the value of the service.'" *Boehner*, 30 F.3d at 159 (quoting James Madison, Speech in the House of Representatives (June 8, 1789), *in* The Congressional Register, June 8, 1789, *reprinted in Creating the Bill of Rights: The Documentary Record from the First Federal Congress* 84 (Helen E. Veit et al., eds., 1991)). A fine deducted from the salary of a House Member who refuses to proceed through security screening, and then refuses to pay the fine as required by House Resolution 73, simply does not implicate the purpose of the Twenty-Seventh Amendment. There is no impropriety—seeming or actual—in fining an individual who defies a House rule; indeed, if all Members followed the rule, the fines would not be imposed at all.

### 3. A Contrary Reading Would Distort The Twenty-Seventh Amendment By Sweeping In Other Statutes And Rules

Finally, the logical impact of Plaintiffs' position upon other statutes and rules confirms that House Resolution 73 does not violate the Twenty-Seventh Amendment. In 1934, Congress authorized the then-appropriate Congressional officials (now the Chief Administrative Officer of the House and the Secretary of the Senate) to "deduct from any salary" of a Member any

18

"delinquent sum" that a Member owed but "fail[ed] to pay."  2 U.S.C. § 4523.  If House

Resolution 73 was understood to violate the Twenty-Seventh Amendment, so too would a statute

that allows for the deduction of debts from Member salaries.

Likewise, the House honors court-ordered garnishments against Members for debts such

as child support or other judgments.  *See* 5 U.S.C. § 5520a(a)(1)(D), (a)(3)(B), (b).  Again, under

Plaintiffs' reading of the Twenty-Seventh Amendment, such garnishments would likely be

unconstitutional.  What is more, Plaintiffs' reading of the Twenty-Seventh Amendment could

even reach other common deductions from Member pay, such as changes to tax withholdings,

deductions for health or life insurance, and deductions for retirement benefits.

Just four years ago, the House adopted a resolution—much like House Resolution 73—

that amended the House Rules to authorize the Sergeant at Arms to "impose a fine" against any

Member who violated a policy prohibiting recordings in the Chamber, and to authorize the Chief

Administrative Officer to "deduct the amount of any fine" from a Member's "net salary."  H.

Res. 5 § (2)(a)(1), 115th Cong. (2017).  If House Resolution 73 is unconstitutional, that

resolution would be as well.  However, both Plaintiffs in this case who were Members at the time

voted in favor of adopting it.  *See* 163 Cong. Rec. H7, H26 (daily ed. Jan. 3, 2017) (recording the

affirmative votes of Reps. Gohmert and Smucker).

Plaintiffs' theory—that the resolution at issue violates the Twenty-Seventh Amendment

because fines may be deducted from Members' net pay in certain circumstances—would call

into question the constitutionality of the foregoing statutes, rules, and deductions.  As explained

above, neither the text nor the purpose of the statute supports a reading that would lead to that

extreme result.

**B.**     **The Rule Does Not Violate Section 5 Or 6 Of Article I Of The Constitution**

Count II of Plaintiffs' amended complaint alleges that House Resolution 73 also violates Article I, Sections 5 and 6 of the Constitution.  Am. Compl. ¶¶ 36-41.  That count fails as a matter of law as well.

1.     The Discipline Clause of the Constitution provides: "Each House may … punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member."  U.S. Const., Art. I, § 5, cl. 2.  The Discipline Clause gives both houses of Congress "broad official powers" to address, among other things, "'violations of internal congressional rules'" and "'even purely private conduct by a Member that, in the House's opinion, reflects badly on it as an institution.'"  *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (quoting Josh Chafetz, Democracy's Privileged Few 74, 210 (2007)).  Accordingly, the Discipline Clause "grants expansive authority for each House to discipline and sanction its Members for improper behavior."  *Id.*; *see also Kilbourn v. Thompson*, 103 U.S. 168, 189-90 (1880) ("[T]he Constitution expressly empowers each House to punish its own members for disorderly behavior," even including "imprisonment … for refusal to obey some rule on that subject made by the House for the preservation of order.").

The imposition and collection of a fine for refusal to submit to a security screening required by the House easily falls within the scope of the House's broad authority pursuant to the Discipline Clause.  Indeed, even using Plaintiffs' preferred definition of "disorderly," the failure to follow a House rule that prescribes a security procedure plainly qualifies:  it is conduct that is "contrary to rules."  *Disorderly*, American Dictionary of the English Language, Noah Webster

(1828);[7] *see* Am. Compl. ¶ 37 & n.2 (citing alternate language within same definition). House Resolution 73 is consistent with the Discipline Clause.

Since the 19th century, the House has exerted its authority to impose fines on Members for behavior inconsistent with its operations. In 1856, Congress passed a law authorizing the House Sergeant at Arms (and the Secretary of the Senate) to deduct from a Member's take-home pay the amount of salary corresponding to days on which the Member was absent unless due to sickness. Rev. Stat. 40 (Aug. 16, 1856); *see also* IV Hinds' Precedents of the House of Representatives §§ 3011-14 (1907) (discussing impositions of such fines by the House). In recent decades, the House has imposed fines on Members on several occasions for improper conduct. *See* Cong. Rsch. Serv., RL31382, Expulsion, Censure, Reprimand, and Fine: Legislative Discipline in the House of Representatives 14 (2016). For instance, in 1969 the House fined a Member $25,000—to be withdrawn from the Member's pay—for various offenses, including the misuse of official committee appropriations, payroll, and expenses. *See id.* To take yet another example, in 2012 a Member was fined $10,000 as part of his reprimand for misuse of official resources. *See id.* That history and practice further confirm the constitutionality of House Resolution 73.

2.      The Arrest Clause of the Constitution provides in relevant part: "[Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same[.]"  U.S. Const., Art. I, § 6, cl. 1.  Plaintiffs' complaint suggests that this clause means that the House cannot require its Members to follow security protocols when entering the House Chamber. This argument too is mistaken.

---

[7] A*vailable at* https://perma.cc/EUW6-MZTV.

At the outset, it is worth noting that the Supreme Court has read the Arrest Clause to cover substantially less than its language might otherwise suggest; the Court has directed that the Arrest Clause "exempts Members from arrest in civil cases only." *Gravel*, 408 U.S. at 614. This limited scope had more practical meaning at the Constitution's framing than it does now: at that time, it was common for a civil litigant to commence a suit by having the civil defendant arrested and taken within the custody of the court. *See Long v. Ansell*, 293 U.S. 76, 83 (1934); Clinton W. Francis, *Practice, Strategy, and Institution: Debt Collection in the English Common-Law Courts, 1740-1840*, 80 Nw. U. L. Rev. 807, 810 (1986). "It is only to such arrests" that the Arrest Clause "applies." *Long*, 293 U.S. at 83.

Most important for present purposes, this case does not implicate the Arrest Clause because the complaint does not actually allege any "arrest." Plaintiffs allege only that they were assessed fines because they evaded a magnetometer or refused to submit to a secondary screening. *See* Am. Compl. ¶¶ 12, 18, 21-26, 28. Plaintiffs further suggest that the Arrest Clause would be violated by "inhibiting" (*id.* ¶ 40) or "delaying" (*id.* ¶ 41) Members from attending sessions in the House Chamber. Plaintiffs do not allege that they were arrested or even that they would have been arrested had they submitted to (or refused to submit to) the screening process.

As Chief Justice Chase long ago explained while sitting in the Circuit Court for the District of Maryland, the Clause supplies only an "exemption from arrest with a view to imprisonment, and nothing else." *Kimberly v. Butler*, 14 F. Cas. 498, 499-500 (C.C.D. Md. 1869); *see Long*, 293 at 82 (discussing *Kimberly* favorably); *Arrest*, Black's Law Dictionary (11th ed. 2019) ("A seizure or forcible restraint, esp. by legal authority."); *cf. Carl v. Ferrell*, 109 F.2d 351, 352 (D.C. Cir. 1940) (explaining in another context that "the term 'arrest' connotes physical restraint not involved in mere service of summons in a civil suit"). Thus, as a matter of

law and common sense, the safety precautions imposed by the House here—like the many minor

inconveniences or delays that individuals must endure as part of daily life—do not amount to an

"arrest."  Because Plaintiffs allege no "arrest," the Arrest Clause claim fails.

In any event, the relief Plaintiffs seek in paragraph 41(3)(a) of their amended

complaint—an injunction prohibiting the "delay[]" of Members from attending sessions in the

House Chamber—cannot be provided because U.S. Capitol Police officers, and not the named

Defendants, perform the security screening at issue.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety, with

prejudice.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492)
*General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
Eric R. Columbus (D.C. Bar No. 487736)
Stacie M. Fahsel (D.C. Bar. No. 1034314)
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants William J. Walker and*
*Catherine Szpindor*

September 3, 2021