**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANDREW S. CLYDE, *et al.*,

                *Plaintiffs*,

        v.

WILLIAM J. WALKER, *et al.*,

                *Defendants*.

Case No. 1:21-cv-01605-TJK

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

I.   The Speech Or Debate Clause Bars Plaintiffs' Suit.................................................. 1

II.  Plaintiffs Fail To State A Claim......................................................................... 7

    A.  The Rule Does Not Violate The Twenty-Seventh Amendment ................................. 7

    B.  The Rule Does Not Violate Section 5 Or 6 Of Article I Of The Constitution........... 12

CONCLUSION.................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 663 (2009)..................................................................................................13

*Barker v. Conroy,*
    921 F.3d 1118 (D.C. Cir. 2019)...........................................................................3, 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................13

\*    *Boehner v. Anderson,*
    30 F.3d 156 (D.C. Cir. 1994)................................................................................8, 9

*Bogan v. Scott-Harris,*
    523 U.S. 44 (1998)......................................................................................................4

*California v. Hodari D.,*
    499 U.S. 621 (1991)..................................................................................................14

\*    *Consumers Union of U.S. v. Periodical Correspondents' Ass'n,*
    515 F.2d 1341 (D.C. Cir. 1975)...........................................................................2-6

*Dombrowski v. Eastland,*
    387 U.S. 82 (1967)......................................................................................................5

\*    *Gravel v. United States,*
    408 U.S. 606 (1972)...............................................................................................2, 5

*Humphrey v. Baker,*
    848 F.2d 211 (D.C. Cir. 1988)................................................................................9

*In re Chapman,*
    166 U.S. 661 (1897)..................................................................................................13

*In re Grand Jury Subpoenas,*
    571 F.3d 1200 (D.C. Cir. 2009)............................................................................12

*Kilbourn v. Thompson,*
    103 U.S. 168 (1880)....................................................................................................5

*Long v. Ansell,*
    293 U.S. 76 (1934)....................................................................................................15

\*    *McCarthy v. Pelosi,*
    5 F.4th 34 (D.C. Cir. 2021).............................................................................1, 2, 5

*Mireles v. Waco*,
   502 U.S. 9 (1991)..................................................................................................4

*Powell v. McCormack*,
   395 U.S. 486 (1969)............................................................................................5

\*   *Rangel v. Boehner*,
   785 F.3d 19 (D.C. Cir. 2015)..............................................................................4

*Torres v. Madrid*,
   141 S. Ct. 989 (2021).........................................................................................14

*Walker v. Jones*,
   733 F.2d 923 (D.C. Cir. 1984).........................................................................3, 4

*United States v. Ballin*,
   144 U.S. 1 (1892)................................................................................................6

*United States v. Brewster*,
   408 U.S. 501 (1972)...........................................................................................13

**Constitution and Statutes**

U.S. Const., Art. I, § 6, cl. 1.............................................................................14

40 U.S.C. § 5104...................................................................................................1

**Legislative Authorities**

Roll Call 99, H.R. 172 (Apr. 14, 2021).................................................................6

Roll Call 150, H.R. 1629 (May 19, 2021)..............................................................6

**Other Authorities**

Black's Law Dictionary  (6th ed. 1991).............................................................12

GianCarlo Canaparo & Paul J. Larkin, Jr., The Twenty-Seventh Amendment:
   Meaning and Application, Harvard Journal of Law & Public Policy,
   Sept. 2, 2021 .......................................................................................................9

Joseph L. Story, Commentaries on the Constitution of the United States
   (1833) § 835.......................................................................................................13

Justine Coleman, *Newly Elected Colorado Republican Wants To Carry Her Gun
   in the Capitol: Report*, The Hill (Nov. 24, 2020) .................................................3

Luke Broadwater and Matthew Rosenberg, *Republican Ties to Extremist Groups
   Are Under Scrutiny*, N.Y. Times (Jan. 29, 2021) ..................................................3

Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (May 20, 2021) (Rep. Hal Rogers) ........................................................................................11

Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (July 1, 2021) (Rep. Virginia Foxx) ....................................................................................11

Letter from William J. Walker to Theodore E. Deutch (Aug. 24, 2021) .....................11

Paul Moon, *Madison Cawthorn Says He Was Armed In Capitol During Mob's Invasion*, Ashville Citizen Times (Jan. 8, 2021) ..........................................................3

Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497 (1992) ...............................................9

Samuel Johnson, A Dictionary of the English Language (1785) ..................................12

The Documentary Record from the First Federal Congress (Helen E. Veit et al., eds., 1991) .....................................................................................9

**INTRODUCTION**

Plaintiffs claim (Opp. 19) that House Resolution 73 is part of a nefarious scheme "to dissuade and prevent Republican members of Congress from being able to speak, debate, or vote at all." They are wrong, just as when they allege (Opp. 7) that "this measure is being actively used to harass members of the House minority party and prevent them from performing their constitutional duties of representation through speaking, debating, and voting on the Floor of the House."

The resolution at issue is a straightforward security measure aimed at ensuring that *all* Members of the House, regardless of partisan affiliation, feel safe and preventing conduct that is already illegal, *see* 40 U.S.C. § 5104(e)(1). Plaintiffs are free to disagree with it, and registered such disagreement when voting against it. They were outvoted. Plaintiffs' ability to speak, debate, and vote on the House Floor requires nothing more than proper planning to ensure arrival with enough time to account for passing through the required security screening.

Plaintiffs' suit is barred by the Speech or Debate Clause, which shields from judicial scrutiny the actions of Congressional officials who enforce a House rule that is integral to the legislative process. And wholly separately, Plaintiffs' suit must be dismissed for failure to state a legally cognizable claim. Plaintiffs give novel readings to three constitutional provisions—the Twenty-Seventh Amendment, the Discipline Clause, and the Arrest Clause—that find no support in text, precedent, history, or logic.

Plaintiffs' complaint must be dismissed.

**I.   The Speech Or Debate Clause Bars Plaintiffs' Suit**

As noted in Defendants' opening brief, the Speech or Debate Clause protects "all 'legislative acts.'" *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021), *cert. pet. filed,* Sept. 9,

2021 (No. 21-395) (internal quotation marks omitted)—*i.e.*, they are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel v. United States*, 408 U.S. 606, 625 (1972). Such acts "include both (i) matters pertaining 'to the consideration and passage or rejection of proposed legislation,' and (ii) 'other matters which the Constitution places within the jurisdiction of either House.'" *McCarthy*, 5 F.4th at 40 (quoting *Gravel*, 408 U.S. at 625).

As explained in our opening brief, the D.C. Circuit's decision in *Consumers Union v. Periodical Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975), forecloses review in this case. In *Consumers Union*, a publisher sued the Executive Committee of the Periodical Correspondents' Association and the Sergeants at Arms of both Houses of Congress, challenging the constitutionality of rules governing access to press galleries in each Chamber. *Id.* at 1342-46. The D.C. Circuit held that, in excluding the publisher from the press galleries, the defendants were "enforcing internal rules of Congress validly enacted under authority specifically granted to the Congress and within the scope of authority appropriately delegated by it," and thus had engaged in "legislative" acts. *Id.* at 1350. Although not "the legislative process itself," *id.* at 1348, the "execution of internal rules" is "identified with"—and protects—"the legislative process," *id.* at 1351. Accordingly, the defendants' actions "were an integral part of [both] the legislative machinery" and the "'deliberative and communicative processes'" of Congress. *Id.* at 1350 (quoting *Gravel*, 408 U.S. at 625); *see also McCarthy*, 5 F.4th at 41 (noting that, in *Consumers Union*, "the executing actions themselves constitute[d] legislative acts" and thus were shielded from judicial review).

Plaintiffs' efforts to distinguish *Consumers Union* fail. *First*, Plaintiffs strangely note (Opp. 18) that the present case involves "constitutional limitations." *Consumers Union* did as

well: plaintiffs there alleged a denial of equal protection and due process, and asserted that the rule in question violated the First Amendment.  *See Consumers Union,* 515 F.2d at 1342.

   *Second*, Plaintiffs cite *Barker v. Conroy¸* in which the D.C. Circuit noted that, in *Consumers Union*, "because the Association's denial of the organization's application involved 'regulation of the very atmosphere in which *lawmaking deliberations* occur,' the Speech or Debate Clause barred us from hearing the suit."  921 F.3d 1118, 1128 (D.C. Cir. 2019) (quoting *Walker v. Jones*, 733 F.2d 923, 930 (D.C. Cir. 1984)) (emphasis added in *Barker*).  That is the same as in the present case, in which the rule in question is a means of addressing Members' worries about the "very atmosphere" in which deliberations with their colleagues occur, and concerns that their colleagues might be carrying weapons.  *See Walker*, 733 F.2d at 930 (noting that in *Consumers Union* "the arrangements in question were intended to shield members of Congress").

   In the wake of the January 6 attack on the Capitol, concern about the atmosphere in the House was such that, to help assuage Member concerns, the House installed magnetometers at entrances to the House Chamber.[1]  A majority of House Members subsequently concluded that a fine should be imposed upon any Member who evaded the security devices.  Plaintiffs may disagree with and even mock the concerns that led to the imposition of security screening, and fines for ignoring them, but that obviously does not give this Court authority to interfere with the

---

[1] For example, one Member who tweeted on the morning of the attack on the Capitol that "Today is 1776" had previously noted her desire to carry a weapon in the Capitol.  *See* Luke Broadwater and Matthew Rosenberg, *Republican Ties to Extremist Groups Are Under Scrutiny*, N.Y. Times (Jan. 29, 2021), https://perma.cc/9LQS-P62C; Justine Coleman, *Newly Elected Colorado Republican Wants To Carry Her Gun in the Capitol: Report*, The Hill (Nov. 24, 2020), https://perma.cc/LRU3-CVV9.  Another Member stated that he was armed in the Capitol that day.  Paul Moon, *Madison Cawthorn Says He Was Armed In Capitol During Mob's Invasion*, Ashville Citizen Times (Jan. 8, 2021), https://perma.cc/A8MJ-4Z6R.

House's judgment as to what security measures are appropriate for entry into the House chamber.

The factual contrast between the present case and *Barker* is instructive.  In *Barker*, the D.C. Circuit rejected a Speech or Debate defense to a lawsuit by an atheist whom the House Chaplain declined to invite to deliver a secular invocation.  *See Barker*, 921 F.3d at 1121.  The court distinguished *Consumers Union* by noting that "any rules pertaining to the opening prayer—an event that occurs at the very beginning of the legislative session before any deliberating whatsoever—could not similarly be said to regulate 'the very atmosphere in which lawmaking deliberations occur.'"  921 F.3d at 1128 (quoting *Walker*, 733 F.2d at 930).  This distinction is decisive: whereas the opening prayer is over before deliberations begin, the issue that House Resolution 73 regulates—the possibility that lawmakers may be illegally armed—pervades the entirety of House deliberations.

*Third*, Plaintiffs suggest (Opp. 19 n.9) that this case is different from *Consumers Union* because the Defendants here, they claim, were not acting in "good faith."  Defendants deny any imputation of bad faith.  And, as a legal matter, an assertion of bad faith cannot serve to defeat a valid Speech or Debate Clause defense, because if it did, then plaintiffs would routinely allege bad faith as a means of surmounting the Speech or Debate hurdle.  *See, e.g.*, *Bogan v. Scott-Harris,* 523 U.S. 44, 54–55 (1998) ("The privilege of absolute immunity would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader." (cleaned up)); *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) ("Such is the nature of absolute immunity, which is—in a word—absolute."); *cf. Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.").

Plaintiffs miss the mark by claiming (Opp. 20) that "security screenings and operating payroll" are not protected by the Speech or Debate Clause.  The question is not whether these activities *per se* are covered by the Speech or Debate Clause, but whether these functions are protected to the extent that they are in furtherance of House Resolution 73.  The answer is clearly yes.  As the D.C. Circuit recently wrote:

> The salient distinction under the Speech or Debate Clause is not between enacting legislation and executing it.  The pivotal distinction instead is between legislative acts and non-legislative acts.  So in *Consumers Union*, the Clause encompassed not just the promulgation of the rules governing seating in the press galleries, but also the administration and enforcement of those rules.

*McCarthy*, 5 F.4th at 41.  Plaintiffs here challenge Defendants' "administration and enforcement" of House Resolution 73.  Their challenge is therefore foreclosed by the Speech or Debate Clause.[2]

Plaintiffs point (Opp. 21-23) to three Supreme Court cases to support their opposing position: *Kilbourn v. Thompson*, 103 U.S. 168 (1880), *Dombrowski v. Eastland*, 387 U.S. 82 (1967), and *Powell v. McCormack*, 395 U.S. 486 (1969).  But the Supreme Court's analysis of those cases in *Gravel* provides no support for Plaintiffs' attempt to distinguish *Consumers Union.*  As the D.C. Circuit recently recognized, these three rulings are "not to the contrary" of the analysis in *Consumers Union,* because "[a]s the Supreme Court has explained in specific reference to those three decisions, they 'do not hold that persons ... are beyond the protection of the Clause when they perform or aid in the performance of legislative acts.'"  *McCarthy*, 5 F.4th at 41 (quoting *Gravel*, 408 U.S. at 618).

---

[2] The involvement of Defendant Walker is even more enmeshed in the legislative process because the imposition of a fine by the Sergeant at Arms *precedes* one more legislative step: an appeal to the House Committee on Ethics by the Member who received the fine.

Finally, Plaintiffs' reliance on *United States v. Ballin*, 144 U.S. 1 (1892)—which is not a Speech or Debate Clause case—is misplaced.  In *Consumers Union* itself, 515 F.2d at 1348 n.13, the losing plaintiffs relied primarily on *Ballin*, yet the D.C. Circuit concluded anyway that the Speech or Debate Clause barred the action, *id.* at 1348-51.  Even if *Ballin* did control this case, Plaintiffs would not prevail.  For reasons stated below and in our opening brief, the House did not "by its rules ignore constitutional restraints or violate fundamental rights."  *Ballin*, 144 U.S. at 5.  Nor can it be said that in this case there is no "reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained."  *Id.* at 5.  Plaintiffs suggest incorrectly (Opp. 14) that imposing fines and "the use of magnetometers in such a way that Members miss votes" demonstrate the lack of fit between means and ends.  But as legislatures throughout the United States have obviously recognized, the use of fines is a commonsense deterrent to violating a rule, and Plaintiffs easily can avoid missing votes by giving themselves a few more moments to reach the House floor.

Moreover, Plaintiffs' claims that security screening unconstitutionally hinders their ability to vote on the House floor have serious credibility problems.  Plaintiffs allege two incidents in which they either missed a vote due to House Resolution 73 or were fined because they evaded the security screening process in order to vote before time expired.  Rep. Smucker alleges that he entered the House Chamber without first passing through security because he feared that time would expire in the vote on H.R. 1629.  Am. Compl. ¶ 24.  The roll call vote indicates that 425 of the 429 Members cast votes, and no others were fined besides Rep. Smucker, strongly indicating that the security screening process did not impede participation.  Roll Call 150, H.R. 1629 (May 19, 2021), *available at* https://perma.cc/3UCX-984J.  Rep. Clyde alleges that he missed the vote on H.R. 172 because he set off the magnetometer and had to be rescreened.  Am. Compl. ¶ 28.  The roll call vote indicates that 418 of the 429 Members cast

votes on that bill.  Roll Call 99, H.R. 172 (Apr. 14, 2021), *available at* https://perma.cc/VDY2-JRMT.

## II.      Plaintiffs Fail To State A Claim

This action should be dismissed for the independent reason that the complaint fails to state a claim.

### A.      The Rule Does Not Violate The Twenty-Seventh Amendment

#### 1.      *The Plain Language Of The Twenty-Seventh Amendment Does Not Cover House Resolution 73*

By its plain text, the Twenty-Seventh Amendment does not apply to House Resolution 73 for two reasons: (1) the fines at issue do not vary Member "compensation"; and (2) House Resolution 73 is not a "law" within the meaning of that amendment.

*First*, House Resolution 73 does not vary Member "compensation" within the meaning of the Twenty-Seventh Amendment.  A fine imposed pursuant to House Resolution 73 affects Member salary only conditionally and indirectly, it does not change Member "compensation" for their "services."

As explained in our opening brief, "compensation" has long been understood to mean salary or wages as payment for services, and House Resolution 73—which imposes a fine (a penalty)—does not change Member salary.  Critically, Plaintiffs do not respond *at all* to our arguments (Mot. 14-15) regarding the plain and historical meaning of "fine," "compensation," and "services."  Indeed, Plaintiffs concede (Opp. 36) the dispositive fact that the fines do "not change the underlying salary level" of House Members.  Nonetheless, they argue that it "defies logic (and math) to suggest that deducting money" does not vary compensation.  But, by its ordinary meaning, compensation is not take-home pay, it is salary.  *See* Mot. 14-15.  Money is regularly deducted from House Members' paychecks for various reasons (*e.g.*, Social Security

and Medicare taxes), and no one would suggest that such deductions reduce their *compensation*. *See* Mot. 6.  It is thus Plaintiffs' position that defies logic.

Defendants' position accords with how these terms are used in everyday life.  If a professional athlete earns $10 million per year, but receives a $50,000 fine for violating a team or league rule, we do not say that his "compensation" has been reduced to $9,950,000.  His compensation for his services remains the same; his punishment for an infraction, which was wholly separate from the services for which he was compensated, is another matter entirely.

*Second*, House Resolution 73 is not a "law" within the meaning of the Twenty-Seventh Amendment.  Plaintiffs point to other contexts in which the term "law" has been interpreted broadly (Opp. 32-34), but they fail to show that "law" has that same meaning in the context of the Twenty-Seventh Amendment.  As the D.C. Circuit has already made clear, the term "law" in the Twenty-Seventh Amendment means a statute passed through bicameralism and presentment: in *Boehner v. Anderson*, the D.C. Circuit explained that the Ethics Reform Act "became a law" within the meaning of the Twenty-Seventh Amendment on November 30, 1989, "when, the bill having passed both Houses and been presented to President Bush, he signed it into law."  30 F.3d 156, 161 (D.C. Cir. 1994); *see* Mot. 16.

Plaintiffs contend (Opp. 31) that "the case did not even purport to pose the question of what governmental actions constituted a 'law' under the Amendment."  But the question in that case was whether each cost-of-living adjustment violated the Twenty-Seventh Amendment, and the plaintiff there argued that each adjustment was "in effect a new law."  *Boehner*, 30 F.3d at 161.  To answer that question the D.C. Circuit had to decide what constituted the relevant "law" for purposes of the Amendment, and it held that "law" in the Twenty-Seventh Amendment has the same meaning as "law" in Article I, Section 7, Clause 2 of the Constitution—a law passed by

both Houses and signed by the President.  *Id* at 161.  Plaintiffs simply do not explain how their understanding of "law" can be consistent with the understanding of the D.C. Circuit in *Boehner*.

Further, Plaintiffs have no response to the argument that "law" in the Twenty-Seventh Amendment must be given the same meaning as "law" in the related Ascertainment Clause, which undisputedly refers to laws enacted through the process of bicameralism and presentment. *See* Mot. 17 (citing *Humphrey v. Baker*, 848 F.2d 211, 215 (D.C. Cir. 1988)); GianCarlo Canaparo & Paul J. Larkin, Jr., *The Twenty-Seventh Amendment: Meaning and Application*, Harvard Journal of Law & Public Policy, Sept. 2, 2021, at 9-11).  While Plaintiffs are correct that the term "law" in the First Amendment has a far broader sweep than in the Ascertainment Clause, the question in this case is what "law" means in the Twenty-Seventh Amendment. Plaintiffs agree with Defendants, and with the historical record, that the Twenty-Seventh Amendment emerged from debates over the Ascertainment Clause.  *See* Opp. 27-30; Mot. 13; Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497, 502 (1992).  Accordingly, "law" in the Twenty-Seventh Amendment carries the narrower meaning contemplated in Article I.

   2.   *The Twenty-Seventh Amendment's History And Purpose Confirm That House Resolution 73 Does Not Violate The Amendment*

The D.C. Circuit has already recognized that, "[a]ccording to Madison, and to all the ratifying states that stated their understanding, the purpose of the amendment is to ensure that a congressional pay increase 'cannot be for the particular benefit of those who are concerned with determining the value of the service.'"  *Boehner*, 30 F.3d at 159 (quoting James Madison, Speech in the House of Representatives (June 8, 1789), *in* The Congressional Register, June 8, 1789, *reprinted in Creating the Bill of Rights: The Documentary Record from the First Federal Congress* 84 (Helen E. Veit et al., eds., 1991)).  In other words, the Twenty-Seventh Amendment

was enacted to address seeming and actual impropriety that may exist when a group of individuals sets its own pay.  As explained in our opening brief (Mot. 18), there is no impropriety—seeming or actual—in fining an individual who defies a House rule and then refuses to pay the fine.

Plaintiffs' brief goes on at length (Opp. 24-30) about the history of the Twenty-Seventh Amendment, apparently to highlight a different (less "commonly thought of") purpose of the Amendment involving *reductions* in salary.  At most, Plaintiffs' history shows (Opp. 26, 30) that the Twenty-Seventh Amendment may have been driven in part by concerns that reductions in pay—perhaps enacted to gain popularity with constituents—could "exclude[] those of modest means from public service."  That concern is not implicated here.  The fine is only deducted from a Member's paycheck if the Member fails to follow a rule of conduct adopted by the entire House, and then fails to pay the fine—Members are not being excluded from office by a $5,000 fine that may never be imposed; and *no one* is affected if they simply follow the rule (as nearly all Members do).

Even taking as correct Plaintiffs' proposed formulation—that the Amendment was intended to prevent Congressional salaries from being decreased to threaten the integrity and independence of Members (Opp. 24)—that purpose has no relevance here.  Nothing about fining an individual House Member who refuses to follow a House rule of conduct threatens the integrity or independence of House Members; to the contrary, it ensures that House Members comply with a rule that allows the House to function in safety.

Thus, Plaintiffs get nowhere with their conspiratorial insinuation (Opp. 30) that "what underlie[s] this case" is "[t]he manipulation of salary by the House Democratic Majority to deprive Republican Members of their political independence and financial ability to serve."  Not only is this impossible given the mechanics of the rule, but it is demonstrably false.  The House

Ethics Committee has overturned several fines, including those originally assessed to two Republicans.[3]   Plaintiffs erroneously state that "the Resolution is enforced only against members of the minority party in the House."  The Majority Whip was assessed a fine by the Sergeant at Arms, although his fine too was overturned on appeal.[4]  Other than the Plaintiffs and the Members whose fines have been overturned, 425 of the remaining 426 Members, including 206 of 207 Republicans, have avoided fines under House Resolution 73.[5]

### 3. A Contrary Reading Would Distort The Twenty-Seventh Amendment By Sweeping In Other Statutes And Rules

Plaintiffs do not dispute (Opp. 36) that their understanding of the Twenty-Seventh Amendment would likely mean that other statutes and rules, such as 2 U.S.C. § 4523, are likewise unconstitutional.  Plaintiffs simply respond (Opp. 36) that those statutes are "not at issue here" and that "ratification of a constitutional amendment necessarily invalidates prior laws that violate the amendment's strictures."  They likewise (Opp. 36 n.24) "take no position" on salary deductions for absences, restitutionary fines, or individual court-ordered garnishments "as such circumstances may be governed by considerations not relevant to this case"; and they say that "voluntary deductions" are not "impinged by this action."  But Plaintiffs cannot avoid the logical consequences of their position and they fail to explain why their theory would not apply to such deductions.  The Court should reject Plaintiffs' invitation to read the Twenty-Seventh

---

[3] *See* Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (July 1, 2021) (Rep. Virginia Foxx), *available at* https://perma.cc/94S7-PTEX; Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (May 20, 2021) (Rep. Hal Rogers), *available at* https://perma.cc/MPU3-KYL3.

[4] *See* Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (May 20, 2021) (Rep. James Clyburn), *available at* https://perma.cc/XHU6-B872.

[5] One other Republican Member was assessed a fine.  *See* Letter from William J. Walker to Theodore E. Deutch (Aug. 24, 2021) (Rep. Bill Huizenga), *available at* https://perma.cc/8G2P-VN5B.

Amendment in a way that would call into question other statutes, rules, and deductions, especially when that reading is not supported by the Amendment's plain language or history.

**B.     The Rule Does Not Violate Section 5 Or 6 Of Article I Of The Constitution**

1.     Plaintiffs continue to argue that willfully evading security devices utilized to detect illegal firearms is not "disorderly behavior" and thus is beyond the scope of the Discipline Clause.  Their argument would surely come as a surprise to millions of law-abiding Americans who pass through such devices every day on their way to work or travel, and would face adverse consequences from law enforcement or other security officials—not to mention their employers—if they tried to avoid doing so.  And it would equally surprise the U.S. Marshals who require persons entering federal courthouses to pass through security screening first.

Plaintiffs inexplicably claim (Opp. 37) that it is "circular logic" to define "disorderly" as "conduct that is 'contrary to rules'" even though that definition is part of the very definition of "disorderly" that they cite in their Complaint.  *See* Mot. 20-21; Am. Compl. ¶ 37 & n.2. (Plaintiffs now proffer two additional dictionaries (Opp. 37-38 & n.25)—but both include definitions contradicting their position.  *See* Samuel Johnson, A Dictionary of the English Language (1785) (defining "disorderly" to include "contrary to law"); Black's Law Dictionary (6th ed. 1991) (defining "disorderly" to include "[c]ontrary to the rules of good order and behavior").)

This is not circular logic, in which the reasoner begins with what he or she is trying to end with.  Plaintiffs' real objection is that they think the definition is too broad—because it includes their behavior.  But the Discipline Clause is famously broad, providing "expansive authority for each House to discipline and sanction its Members for improper behavior."  *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring).

Indeed, the Supreme Court has noted that each chamber's discretion in disciplining its members is "almost unbridled" and "there is no established right to review" of such decision. *United States v. Brewster*, 408 U.S. 501, 519 (1972).  The Discipline Clause's "right to expel extends to all cases where the offense is such as in the judgment of the [House or S]enate is inconsistent with the trust and duty of a member."  *In re Chapman*, 166 U.S. 661, 669 (1897).  As Justice Story wrote regarding the Rulemaking and Disciplinary Clauses:  "No person can doubt the propriety of the provision authorizing each house to determine the rules of its own proceedings. . . . But the power to make rules would be nugatory, unless it was coupled with a power to punish for disorderly behaviour, or disobedience to those rules."  Joseph L. Story, Commentaries on the Constitution of the United States (1833) § 835.

Imposing a fine for violating a House rule that imposes a minimal burden on Members to prevent an illegal activity and ensure the security of the House Chamber is thus well within the heartland of the Discipline Clause.

Perhaps recognizing the weakness of their legal arguments, Plaintiffs wrongly state (Opp. 39) that "at the current stage of pleading, the plausibility of Plaintiffs' position is all that is required to deny Defendants' Motion to Dismiss on this ground."  Plaintiffs conflate *factual* plausibility with *legal* plausibility.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must have pleaded "enough *facts* to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But all the factual content in the world cannot save a claim that is legally unsupported.  *See id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Although for the purposes of a motion to

dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted).

2.  Plaintiffs were not subject to any arrest and thus have no claim under the Arrest Clause.  *See* U.S. Const., Art. I, § 6, cl. 1 ("[Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same[.]").  Plaintiffs allege (Opp. 40-41) that a Member is "arrest[ed]" when he or she is forced to stop to go through a magnetometer and/or hand wand, which they describe as "temporary detention."  If this were enough to constitute an arrest, then any Transportation Security Agency agent who requires a Member en route to or from Washington, D.C. to submit to a security screening has violated the Arrest Clause.  This cannot be—and is not—what the Arrest Clause means.

Plaintiffs incorrectly rely (Opp. 40) on *Torres v. Madrid*, 141 S. Ct. 989 (2021), in which the Supreme Court looked to the common law of arrest to determine the historical understanding of "unreasonable search and seizure" under the Fourth Amendment, explaining that a "seizure of a person plainly refers to an arrest."  *Id.* at 996 (internal quotation marks omitted).  But the *Torres* Court noted that a seizure—including by submission to a "show of authority"—occurs only if "the liberty of the person" is "restrain[ed]."  *Id.* at 995 (internal quotation marks omitted).  Here, the liberty of House Members is not restrained—whether they walk through a magnetometer, are screened with a hand-held wand, or are otherwise momentarily delayed, they remain at all times free to simply leave.  *See California v. Hodari D*., 499 U.S. 621, 627–28 (1991) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (internal quotation marks omitted)).

As the Supreme Court wrote of the Arrest Clause in *Long v. Ansell*, 293 U.S. 76, 83 (1934), "[w]hen the Constitution was adopted, arrests in civil suits [as a means of civil process] were still common in America.  It is only to such arrests that the provision applies." *Id.* (footnote omitted).  Thus, a Member of Congress cannot be arrested to initiate a lawsuit—a practice that no longer exists, but that did at the time of the Founding.  That is the coverage of the Arrest Clause, and Plaintiffs' delay due to having to walk through security devices in order to enter the House chamber is obviously beyond its scope.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492)
*General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
Eric R. Columbus (D.C. Bar No. 487736)
Stacie M. Fahsel (D.C. Bar. No. 1034314)
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants William J. Walker and Catherine Szpindor*

September 24, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2021, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter